Mary E. Fennerty Testamentary Trust, Harry A. Fennerty, Testamentary Trustee Under the Will of Mary E. Fennerty, Deceased v. Commissioner.
Fennerty Testamentary Trust v. Commissioner
Docket No. 47162.
United States Tax Court
T.C. Memo 1954-138; 1954 Tax Ct. Memo LEXIS 108; 13 T.C.M. (CCH) 831; T.C.M. (RIA) 54244; August 25, 1954, Filed George B. Berger, Esq., Berger Building, Pittsburgh, Pa., for the petitioner. Phillip O. North, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined an income tax deficiency of $3,737.49 for 1948 and one of $4,838.66 for 1949. The issue is whether the income of the petitioner trust was distributed or distributable and deductible by the petitioner. The parties filed stipulations which are adopted as findings of fact. The testimony of one witness has also been carefully *109 considered but requires no additional finding. [Findings of Fact] Mary E. Fennerty died testate on September 20, 1945 while residing in Pittsburgh, Pennsylvania. She was survived by an adopted son, Harry A. Fennerty, and his three children whose ages at that time were 7, 2 and 1. Harry has no other children. Paragraph Fourth of Mary's will was in part as follows: "FOURTH. All the rest, residue and remainder of my property, real, personal and mixed, of whatsoever kind or nature, and wheresoever situated, I name and designate as a trust fund or trust estate and I give, devise and bequeath the same to my Trustee, or to his successor Trustee, both herein named, and to their respective successors in trust, to hold the same in Trust for the following uses and purposes: "1. My Trustee or Trustees shall take, receive and hold and manage said Trust fund and, without in any manner being subject to the control of any court, shall invest and reinvest the same in such common or preferred stocks or bonds or mortgages or other securities or property, real, personal or mixed, as in his, her or their sole discretion may seem to him, her or them to be advantageous or proper for the benefit *110 of said trust fund, and they shall not be limited or confined in their choice of investments to such as are expressly authorized by the laws of Pennsylvania or of any other state or territory as legal investments for trustees, and they may retain, as long as in their sole discretion they think proper, as part of the assets of said Trust fund, any properties or securities of which I may die seized or possessed. "2. My Trustees shall collect all of the income from said Trust fund and after deducting therefrom all necessary expenses and taxes properly chargeable thereon, they shall pay out or accumulate the same in the following manner, namely: "(a) Subject to the other provisions of this will the sole and only beneficiaries of the income of this Trust Estate are the children of my said adopted son, and the issue of such of his children as may be deceased, whether now living or hereafter born, and they shall have per stirpes, equal interests in the income of said Trust Estate, the issue of deceased children taking among them only the share of the income that their ancestor, being one of my adopted son's deceased children, would have taken had he or she continued to live. "(b) During *111 the lifetime of my said adopted son, and during the minority of any of the beneficiaries of the income of this trust, not to exceed the period of twenty-one years from the date of my death, the balance of the net income remaining after the payments mentioned in clause (d) hereof, shall be accumulated and invested and reinvested by my Trustee and when and as each of the beneficiaries of the income reaches the age of twenty-one years, my Trustee shall turn over and deliver to such child his or her respective share of the income accumulations, and thereafter the Trustee shall pay to such beneficiary his or her share of the income in annual installments, or oftener if my Trustee considers it convenient to do so. "(c) Any children born to my adopted son shall, from the date of my death, or, if thereafter born, from the dates of their respective births, each be entitled to his or her equal share in the income from this Trust fund. "(d) During the minority of any of the beneficiaries of this Trust fund my Trustee, in his or her sole discretion, and without the control of any court, may use any part, or all, of such minor beneficiary's share of the income for his or her respective maintenance, *112 support and education, which terms are employed herein in their broadest possible sense, and may supply such minor with liberal allowances of spending money, and my Trustee shall be the sole judge as to whether any expenditures or allowances made are proper under this clause and shall in no manner be answerable to such minor or to any other person for any expenditures or allowances so made. "3. My said Trustee or his successors, as the case may be, shall hold the principal of said Trust Estate throughout the lifetime of my adopted son, Harry A. Fennerty, and upon his death shall distribute the principal thereof in equal shares among the children of my said adopted son and the issue of any of his children who may have pre-deceased him, such issue receiving per stirpes only the share that their ancestor, being one of my adopted son's deceased children, would have taken had he or she survived my said adopted son. If at the death of my said adopted son any of the beneficiaries of this Trust Estate are minors, then my Trustee shall continue to hold and manage and deal with the share of such minor with the same powers as herein provided until he or she becomes twenty-one years of age, *113 at which time such minor's share shall be turned over and delivered to him or to her. "4. In the event that my adopted son shall leave no issue surviving him, then at his death my Trustee shall pay over and distribute to RUTH PURCELL FENNERTY, the wife of my adopted son, the whole of the principal of the Trust fund." Paragraph 6 of the stipulation is as follows: "The estate of Mary E. Fennerty was duly administered by her executors, and on June 13, 1946, the Orphans' Court of Allegheny County, Pennsylvania, entered its Order of Distribution and therein provided: 'To Harry A. Fennerty, Testamentary Trustee in trust for purposes specified in Fourth paragraph of will, balance, viz * * *
'(List of securities and cash) $369,185.26 * * *
'Income balance, viz - $9,706.10'" Harry, as trustee of the testamentary trust, accepted custody of that trust corpus and thereafter through the taxable years administered it as a single undivided fund. No income from the trust had been expended for the maintenance, support or education of any of the three children up to the date of the trial in this case. The income from the trust amounted to $3,612.18 for 1946, $10,286.04 for 1947, *114 $14,121.03 for 1948 and $16,742.42 for 1949. Books for the petitioner were opened as of June 12, 1946. They record no distribution of income for 1946 but contain an entry dated December 31, 1947 showing one-third of the income up to that date under the name of each child and under the heading "Distribution". 1946 payments of income tax of the trust and interest on estate tax were recorded in 1947 as equal distributions to the three children. Amounts paid as income tax of the three children for 1947, 1948 and 1949 were similarly recorded as distributions. The 1948 and 1949 income of the trust was recorded as equal distributions to the three children as of December 31 of each year. Amounts recorded as distributed during the years 1947 through 1949, other than the tax payments, were retained by Harry as trustee of the petitioner. Harry opened an account on September 14, 1946 in a bank at Alliance, Ohio, in the name of "Harry A. Fennerty, Trustee". He deposited the income of the trust in that account and it was the only account maintained in connection with the trust until after the taxable years. Harry opened three separate accounts in the same bank each in his name as trustee for *115 one of his children on December 3, 1951, and on November 20, 1952 closed those accounts and transferred the balances to new accounts in his name as agent for each of the three children. Harry transferred funds from his "Trustee" account to each of the separate accounts for the children. Harry filed fiduciary returns in the name of "Trust U/W of Mary E. Fennerty" for 1946, 1947, 1948 and 1949. No deductions or distributions were claimed on the 1946 return and tax due was shown on that return. The income shown on the returns for 1947, 1948 and 1949 was deducted as distributable equally to the three beneficiaries and no net income subject to tax was reported. Harry claimed each of his three children as a dependent on his personal returns for the years 1946 through 1949. No returns for 1946 were filed on behalf of the three children but individual returns for them on form 1040 were filed for 1947, 1948 and 1949 reporting one-third of the income shown on the return filed for the trust. The revenue agent completed his examination of the books and records of the petitioner on June 29, 1951 and the notice of deficiency was mailed on January 8, 1953. The Commissioner held that the trust *116 income was taxable to it. The first accounting for the petitioner was filed with the Orphans' Court on March 2, 1953. It accounted for the income of the trust amounting to $124,174.44 as distributed to Harry as agent for each of his three children. Harry also filed a petition for distribution in accordance with his account, stating that he had been advised that each child was entitled to receive one-third of the trust income as absolute owner and he was distributing one-third of that income to himself as agent for each child. A guardian ad litem was appointed for the children upon Harry's petition and that guardian filed a report and exceptions to the account on April 30, 1953. A judge of the Orphans' Court rendered an opinion and entered a decree, both dated July 29, 1953. The guardian contended that the three children took vested interests in the income of the trust as it was earned; an after-born child shares in income only from the date of its birth; income must be distributed currently to Harry as trustee for each child during its minority and not as agent for the child; a decree for such distribution "will in effect set up separate trusts for the benefit of each beneficiary *117 now in esse or later born"; distributions of the stock of one corporation by another represent income; and the trustee erred in accounting for one share of Texas Gulf Sulphur Company common and 71 shares of Standard Oil Company of New Jersey common as principal. The Court sustained the exceptions filed by the guardian ad litem and stated in its opinion that the income vests in each beneficiary immediately as earned and is distributable, as earned, to Harry as separate trustee for each beneficiary. It ordered the income, including undivided interests in the one share of Texas Gulf Sulphur Company and the 71 shares of Standard Oil of New Jersey, distributed in equal thirds to Harry as trustee for each of the three children. The record does not show that any of the income of the petitioner was ever invested by the trustee or what was done after the taxable years with the amounts deposited in the separate trustee and agency accounts in the name of each child. [Opinion] Section 162(b) provides that income of a trust "which is to be distributed currently by the fiduciary to the beneficiaries" shall be allowed as a deduction in computing the taxable net income of the trust and "shall *118 be included in computing the net income of the beneficiaries whether distributed to them or not." Section 162(c) allows a deduction under similar circumstances for income "which is properly paid or credited during such year" to any beneficiary where such income may be either distributed or accumulated in the discretion of the trustee. Each case of this kind must necessarily depend to a large extent upon its own facts. The decedent provided for a single trust so far as the corpus or principal was concerned but the question here pertains to the income. All beneficiaries were to have equal shares of the income as it was earned but if any new beneficiaries were born they would share only in income thereafter earned. It was also provided that money could be used from the share of a beneficiary to maintain, support or educate that beneficiary. The shares of the beneficiaries in the income could thus accumulate in different amounts in the hands of the trustee in accordance with the clear intention of the decedent. The guardian ad litem thought that the trustee, in holding each of these shares of income, was in law serving in a different fiduciary capacity from his capacity as trustee *119 of the corpus. The Orphans' Court gave consideration to the whole case and agreed with the guardian. Harry had a duty to each income beneficiary to receive, keep invested, manage and preserve, pending the final distribution, the accumulations of that particular share separate from all others. Each income trust differed from every other in beneficiary, duration, and composition. The will contains no provisions wholly inconsistent with multiple trusts. There is no good reason, under such circumstances, why all of the income should be taxed to the petitioner, the trust of the corpus, even though the decedent and Harry may not have realized that more than one trust was being created by the requirements of the will. , , certiorari denied ; ; . Decision will be entered under Rule 50.